Next case in our call this morning is agenda number 15, number 108-673, State Building Venture, Cedera-Appley v. Maureen O'Donnell. Counsel, you may proceed at your leisure. Good morning, Your Honors, Counsel. My name is Brett Lagner. I'm an Assistant Illinois Attorney General, and I represent the Defendant Appellant, Director of the Illinois Department of Central Management Services in this matter. Your Honors, this Court should reverse the judgment below for three reasons. First, State Building Venture, SBV, is collaterally estopped from claiming that the Circuit Court had jurisdiction, subject matter jurisdiction to entertain its claims. Second, sovereign immunity, in fact, bars SBV's contract claim against the State from the jurisdiction of the Court. And third, under the statute, under Section 405-315-AS, the renewal terms, the renewal periods, for the lease of the mall space of the Thompson Center are subject to a best interest of the State determination by the Director at the time of each separate renewal period. Your Honors, I'll be first turning to the threshold subject matter jurisdictional issue of sovereign immunity. As Justice Hoffman below recognized, SBV brings a contract action against the State that the Court is without jurisdiction to entertain. The Court of Claims Act, Section 8B, provides that all claims against the State founded upon any contract entered into with the State are within the exclusive jurisdiction of the Court of Claims. SBV's claim is both against the State and founded upon a contract, taking the second half of that first. SBV's claim is clearly funded upon a contract. By this action, SBV seeks a determination of its renewal rights under the lease. The party's relationship is defined by the lease, the contract in this case. Without this contract, there would be no relationship between the State and SBV. The dispute boils down to whether the lease provides for automatic renewals for the Thompson Center, whether it provides for automatic renewals of its terms for the Thompson Center mall space. Section 405-315AS of the CMS law is legally deemed to be incorporated into this contract. The law considers that this provision would have been written into the contract, but the parties didn't need to because there's a statute that specifies these terms. Interpreting that statutory provision to derive contract rights is still a claim founded upon a contract entered into with the State. Section 315AS would simply not be relevant if it were not for the fact of the lease, if it were not for the fact of the contract that SBV entered into with the State. What about the prospective injunctive relief exception? Your Honor, that's an excellent question. SBV claims that the officer suit exception or the prospective injunctive relief exception applies to this case to prevent the operation of sovereign immunity, but there are a couple of problems with that. To satisfy the officer suit exception, two elements need to be met. First, there has to be a claim that a State actor has acted in excess of delegated authority, and second, that the plaintiff is actually seeking prospective injunctive relief. Taking the second part of that first, because it's the quicker answer, as Justice Hoffman below noticed and recognized and stated in his dissent, SBV does not, in fact, seek any prospective injunctive relief. They've explicitly disavowed that. In their brief on appeal, they say we are not seeking any order enjoining the State to do anything. There's simply no claim for prospective injunctive relief here. Additionally, this is not simply a case where SBV has alleged that a State actor has acted in excess of delegated authority. This Court in the President Lincoln Hotel's case, PHL, stated that it is well settled that a State officer's erroneous exercise of a broad grant of delegated authority does not constitute an ultra-virus act sufficient for the operation of that exception. The erroneous exercise of delegated authority does not constitute an ultra-virus act such that the officer suit exception applies. Here, there is no dispute that the State had the authority to enter into the lease for the Thompson Center space. Additionally, there is no dispute that the director of CMS has the authority to enforce the lease provisions. In enforcing these contract terms, the director understood the renewal provision to require a best interest determination. At most, this is a mistake in interpreting the contract, but the interpretation of the contract was well within the director's broad delegated authority. So instead of a case where the director is acting outside of any authority by construing the contract, the director is acting within his authority in construing the contract. At most, there is an allegation that he has made a mistake in the exercise of that delegated authority. But a mistake in the exercise of that delegated authority under PHL and under the Supreme Court's Larson case that PHL was quoting for that proposition, a mistake in the exercise of delegated authority is not sufficient to circumvent sovereign immunity, or to, in other words, qualify the plaintiff for the officer immunity exception. So in short, then, the officer suit exception or the prospective injunctive relief exception does not apply for two reasons. One, SBV explicitly does not seek any prospective injunctive relief. And two, their claim really is only that the director of CMS has made a mistake in exercising his delegated authority, not that he is undertaking some action that is without his authority entirely. Along these lines, SBV tries to get around the prospective injunctive relief question by stating that, well, we're not seeking damages here. We don't have a damages claim. But that doesn't remove their action from being a present contract claim. In their complaint, they have specifically alleged that the director of CMS has maintained this interpretation, has taken this interpretation, that at the time of each renewal, a best interest determination has to be made. SBV has specifically alleged that it already has been damaged by that interpretation. SBV specifically alleged that it continues to be damaged by that interpretation. SBV has alleged that there is a present claim, a present dispute under the contract that has already damaged it. Just saying, well, we don't seek monetary damages for that claim is not enough to transform it into something else or to remove it from the present claim exception. Indeed, in PHL, in the President Lincoln Hotel's case, that wasn't a claim for monetary damages. That was a claim for specific performance under a contract. But the sovereign immunity is still attached. The officer's suit exception did not apply. For these reasons, the authority that SBV relies on, the biomedical case, biomedical laboratories case, Senn Park, and landfill, are distinguishable. In biomedical laboratories, the plaintiffs sought an injunction. They sought specific prospective injunctive relief, and joining, prohibiting the state from terminating their participation in the Medicaid program. Not only did they seek prospective injunctive relief, as opposed to the situation here, the plaintiffs alleged that the director of public aid did not have the statutory authority to suspend their participation in the Medicaid program. It wasn't that the director of public aid could make a decision one way or the other as to whether or not to terminate their participation and simply made a mistake. It's that the director was wholly without that authority to terminate their participation. As opposed to here, where the director of CMS has the authority to enforce the lease terms, but at most has allegedly made a mistake as to what those lease terms mean. Moreover, biomedical was not a contract claim. The landfill case, similarly, the plaintiff in that case sought an injunction preventing an administrative proceeding. It sought prospective injunctive relief, stopping the Illinois Police Control Board from holding a hearing concerning a permit. In that case, the plaintiff alleged that the Police Control Board did not have the delegated authority to issue the rule that provided for the hearing that they sought to stop. In other words, the plaintiff in landfill said that this is not a case that the PCV has made a mistake in the conduct of its hearing. It's that the Police Control Board simply does not have the authority to hold such a hearing. This entire proceeding is entirely outside of the Police Control Board's delegated authority. And finally, the landfill case, again, was not a contract. It did not involve a contract entered into with the state. It did not have the broad terms of Section 8B of the Court of Claims Act, providing that all actions on contracts entered into with the state, the plaintiff sought an injunction preventing Medicaid reimbursements from being made at a newly determined rate and sought an order requiring Medicaid reimbursements be made at the previous rate. The basis for that prospective injunctive relief was that the director of public aid, again, acted outside of his delegated authority. By issuing a rule without going through the Administrative Procedure Act. It's not that the director of public aid made a mistake in exercising some part of his authority that he had. It's that the director simply did not have the authority to provide for the new reimbursement rates through a rule outside of the confines of the Administrative Procedure Act. And once again, that was not a contract action, which did not implicate Section 8B of the Court of Claims Act, nor the notion that when the parties have a contract, and when there's a dispute over that contract, that is a present claim for relief. It's a present claim. It exists now, and they're seeking to remedy the contract dispute. MS. LEGNER.  MR. LEGNER. Yes. MS. LEGNER. Is the statute ambiguous regarding the lease term for renewal and subject to the director's best interest determination? MR. LEGNER. Your Honor, it is our position, it's the director's position, that the statute is unambiguous in that it clearly provides that the lease term is that the director may enter into a 15-year lease plus renewals, subject to renewals, and that the leases are subject to the best interest determination. That phrase, that the leases are subject to best interest determination, essentially means that each renewal is considered to be a lease that would be subject to the best interest inquiry. The reason for that, the reason for that, and SBV certainly makes up much of its claim that, well, the reason that the renewal provision was added, the statute was amended to add for the possibility of renewals, was that they came to the State and said, we need a 60-year lease to get financing. In fact, we've already told some people that we're going to have a 60-year lease with the State. So to nail down the financing, we need a 60-year lease. The General Assembly then added the subject to renewals provision, but the General Assembly did not take out the 15-year initial provision. The General Assembly did not simply provide that, well, the State can enter into a lease of indefinite duration or any lease of the State property, of the Thompson Center Mall, nor did it provide that the State can enter into a lease of 60 years. What the General Assembly did was it kept the 15-year term in there. It said the State can enter into a lease of the Thompson Center Mall for 15 years subject to renewals. The General Assembly's act of doing so and keeping that 15-year term in there has to be given effect. We need under statutory construction principles, we need to give effect to that term. Why would the General Assembly keep the 15-year term in there instead of striking it and making it the possibility of 60 years, or however long the State would choose? It's because the General Assembly did not want to cede or get away with, or I'm sorry, do away with the requirement that the State make sure, ensure that the lease of a piece of State property is in the best interest of the State. By keeping that 15-year term in there, that indicates or shows that the General Assembly intended the State to make its initial determination, and they said at the time of the contract you can go ahead and make a determination of the best interest of the State for a 15-year term. And that's extraordinary. Only two buildings, only two public buildings are allowed to have that 15-year term. All the other ones are five years. But the General Assembly, which guards, zealously guards this leasing of State property and the requirement that it be subject to the best interest analysis, said okay, you can have 15 years for this building. And yes, we'll give you more. You can enter into renewals. But instead of just simply saying that you can enter into a 60-year lease, the General Assembly said you get 15-year lease plus renewals. That means, that has to be given effect, and that means that the General Assembly said sure, fine. At the initial point you can make the determination that this 15 years will be in the best interest of the State. But the General Assembly obviously didn't want to put the Director in the position of saying that okay, for the next 60 years this is in the best interest of the State. That's why the General Assembly maintained the 15-year provision. What that means then, and read in conjunction with the initial paragraph of 315A, which provides for the general five-year lease term, which is what all the renewal periods are, what that means, reading those two sections together, is that the General Assembly intended the best interest determinations to be ongoing every five years. If the General Assembly hadn't intended that, it simply could have stricken the initial 15-year term, and provided that the State could enter into a lease of up to 60 years, or up to 100 years, or anything like that. By maintaining the 15-year lease term, the General Assembly intended the Director of CMS to check in again, and again, and again, to ensure that the lease continues to be in the best interest of the State, or that each renewal, which would be, in effect, the entry of a new lease, it's coined in the same terms, but a renewal of the lease is, in effect, the entry of a new lease, to make sure that that is in the best interest of the State. I see your light is on, Mr. Legner, and on the collateral estoppel issue. Yes, Your Honor. The Circuit Court, in the first instance, found moot, that the case was moot, right? And didn't they merely indicate that if a case was properly brought, it would go before the Court of Claims? So my question, with time running out, is, hasn't this Court indicated that for purposes of a final judgment, collateral estoppel is not implicated when a Court finds that something is moot, even if they find, you know, that the case is dismissed for mootness with prejudice? That's correct. There's no question about that. Collateral estoppel does not attach when it's a moot, when the decision is predicated on mootness. The Director's argument, though, is that there were two parallel rulings. Looking at the transcript of the oral argument, the parties were simultaneously arguing mootness and sovereign immunity. The Court, and again, the Court ruled orally, and so it's not perfect. It's not a revised, written opinion. Didn't the Circuit Court, because I want to understand your argument, are you disputing that the Circuit Court suggested that after finding mootness, that if the dispute arose later, the proper avenue would be the Court of Claims, right? Didn't they do that after finding a mootness, even by saying, if this dispute occurs at a later point in time when it wouldn't be moot, it should be in the Court of Claims? Isn't that tantamount to dicta in an appellate court case? Well, Your Honor, the issue with that is the Court did say moot, and then the Court said, if this comes up again, I would suggest that this belongs in the Court of Claims. At that point, the Court then said, I therefore dismiss this matter. And reading the Court's line of thought there, and keeping in mind the fact that subject matter jurisdiction, the Court has to be, you know, constantly be, you know, assured of its own jurisdiction to entertain a case, and the threshold nature of the subject matter jurisdictional question posed by sovereign immunity, we submit that both prongs, that it dismissed for both reasons, for mootness and summary judgment. Sure, it framed its statement, its sentence. The Court framed its sentence about sovereign immunity in a future conditional sense. But that doesn't, it's the Director's position that that doesn't take away from the fact that the Court was saying that this type of matter is barred. Well, back to the question, too. If this Court was to find something moot, right, we'd have to find an exception to the mootness doctrine to then go on and address the argument. Correct. Namely, sovereign immunity in this particular case. So that's why I said, isn't it tantamount to some type of advisory opinion that, hey, this should really be Court of Claims, don't bother me with it later, but for collateral estoppel purposes, it's not a final judgment. I understand that your position is if you prevail under sovereign immunity or if you prevail under the merits or if you prevail under collateral estoppel, you win under any of those arguments, right? That's correct, Your Honor. But it's also correct, you were right, that if the decision was based solely on mootness, then there's no collateral estoppel effect here. For these reasons, Your Honor, we ask that this Court reverse the judgment below. Thank you very much. May it please the Court. My name is Steve Weiss, and along with my associate, Leslie Smith, I represent State Building Venture, the plaintiff in this case. Counsel, before you get going, if I might take you back to where he left off. Sure. In response to Justice Thomas, he was, Mr. Lingner said there were two rulings. And I think he really, maybe I'll have to ask him when he gets back up, but I think he commented on the one point. I wasn't quite sure how you read that ruling, the oral ruling from the earlier proceeding. Were there two rulings? And if so, could you please distinguish them? There was one ruling, and that was mootness. And then, as Justice Thomas suggested, the Court suggested that if there were a later lawsuit, that it might go before the Court of Claims. But the finding, the holding, was dismissed for mootness purposes. And that came before the discussion or the suggestion that a future claim might go before the Court of Claims. And the reason why it had to be a suggestion, well, there's two reasons. First, once the Court found that it was moot, there was really no reason to go into, and in fact the Court couldn't go into, the other issue of sovereign immunity. And the second reason is that in terms of a next lawsuit, a separate lawsuit later on, the Court at that time, Judge Mackey, couldn't really know what the allegations of that lawsuit would be. So it would be impossible really to make a definitive ruling that a subsequent lawsuit would have to go before the Court of Claims. I would like to, before I get into the regular thing, I want to address one issue that was raised by counsel. This is not a case about whether the lease provides automatic renewals. There is no dispute whatsoever about what the lease itself says. It's absolutely clear. It says there's an initial term of 15 years, and then there are nine automatic renewals. So nobody is arguing over what the language of the lease says. It's an argument about what the statute says. There's three issues that are addressed here, and counsel alluded to all of them. Whether the state building venture claims are barred by sovereign immunity, whether the mootness dismissal from the prior lawsuit bars the case, and the interpretation of the enabling statute. Although counsel addressed mostly those technical arguments about whether we should even be here, I would like to start with the ultimate question of the interpretation of the statute. CMS interprets the statute to require that the director reexamine the lease terms every five years. First, that CMS or the director examine the terms of the lease at the inception, and then in addition to that, that every five years, even though there's an automatic renewal, that they reexamine to determine whether it's in the best interest of the state. This is erroneous for three reasons. One is the plain language of the statute. The second is the 1983 amendment to the statute, and the third is the difference between the statute for the Thompson Center and the statutes for either the Balandic Building or any of the other buildings. First, CMS agrees that the statutory construction is best determined from the plain and ordinary meaning of the language used in the statute. The plain language here is that CMS can enter into a lease for 15 years subject to renewals. If the legislature intended to limit a lease to 15 years, it would not have added the words subject to renewals. In 1983, this was when the amendment was made. Starting in 1981, the version relating to the Thompson Center said that the state could enter into leases of 15 years. In 1983, the amendment added those words subject to renewals. The only other change at that time was a description of the premises. So the legislature obviously intended something when it added the words subject to renewals. And we can tell that the legislature intended to expand the lease term by comparing this statute with the statute for the Balandic Building. As counsel pointed out, many of the leases, CMS is limited to five years. As of 1981, there were two exceptions. There was the Balandic Building and the Thompson Center. And in 1981, the statute for both of those spaces said terms not to exceed 15 years. In 1983, they amended the statute with respect to the Thompson Center to add the words subject to renewals, but they left the Balandic language exactly the same. So after the amendment, you have Balandic Building, terms not to exceed 15 years, Thompson Center, terms not to exceed 15 years, subject to renewal. So it's clear that the legislature intended for there to be a difference between those two. Counsel, if we accept your interpretation of the statute, though, the state would be tying itself down for at least 60 years in this case, right? Not necessarily. Without an opportunity to reconsider. Without an opportunity to reconsider, yes. But they have the opportunity at the beginning of the lease. And it's our position that what the statute means is at the beginning of the lease, the director makes a determination whether the lease as a whole, including all of its terms, including any renewal terms, is in the best interest of the state. But a lot could happen in 60 years. A lot could happen in 60 years. With no opportunity to make another best interest determination. Correct. According to your interpretation. Yes. But the director has to make that determination at the initiation of the lease. The director could have said, well, 15 years plus all these automatic renewals, that's not in our best interest because we should be able to look at it every five years. But that's not what the director decided, and nobody is arguing whether the director was right or wrong in making that initial determination. No, but you're arguing the statute. That's what the statute says. Right. We're saying the statute allows that type of decision by the director. The statute says the director can look at the lease at its inception. And the inception, but not subsequent. Correct. Because there's no provision in the statute for the subsequent kind of renewals. And the reason why this all makes sense is that this was empty space, and it was a lot of space. And CMS wanted to lease the space, but it didn't want to spend the $10 million or so that would be necessary to build it out. So they needed somebody who was willing to put $10 million in. Nobody was willing to put in $10 million if all they were going to have was a 15-year lease. That was explained to the state. The director went and had the statute amended to allow for this broader, longer lease. And it's also supported by the way the parties treated the lease. For the 20 years or so after the lease was entered into, the parties all treated it as though it was 15 years plus nine automatic renewals. There was a memorandum of lease signed by the director. There was a letter of estoppel signed by the director.  All of those documents signed by the director subsequent to the lease all confirmed that it was a 60-year lease. So that's the way the parties understood it. CMS's interpretation, on the other hand, doesn't really make sense. Because their interpretation is that the statute requires the director to look at it at the beginning and look at it every five years to determine whether it's in the best interest. The problem with this argument is that the language, when in the judgment of the director such leases will be in the best interest of the state, that was in the statute before the amendment. So it's clear that that language, when in the judgment of the director, was relating to the initial time period and not to the subsequent renewals. When the subject to renewals was added, everything else stayed the same. The legislature didn't say when in the judgment of the director such leases or renewals will be in the best interest of the state. That would have had to be added in order to get the reading that CMS is arguing for. And even that might not have been enough. It probably would have had to say when in the judgment of the director such leases or renewals will be in the best interest of the state at the time of those subsequent renewals. And it clearly doesn't say anything along those lines. CMS argues that no words should be rendered meaningless. But under its own interpretation, the words subject to renewals are completely meaningless and superfluous. Because under CMS's interpretation, the Thompson Center language is no different than the Balandic building language. CMS also argues that provisions shouldn't be added. In its brief, it argues this. But that's exactly what its interpretation would require. It would require additional language in the statute that just isn't there. CMS's interpretation would also mean that this applies, this being able to reexamine the lease at every renewal. Under CMS's interpretation, that would apply to every lease that CMS enters into, regardless of whether it's 15 years or 5 years. Because under their rationale of what the statute means, when they say that the director can reexamine at every renewal, that would equally apply to a 5-year lease with a 3-year renewal or a 1-year lease with a 1-year renewal. And first, it's not a position they've ever taken anywhere else, and it just doesn't make sense. CMS also raises some issues about the legislative history here. First, CMS admits that if it's unambiguous, the court should not go to the legislative history. And we believe the statute is unambiguous, and therefore legislative history is not really relevant here. However, even if the legislative history is looked at, it does not contradict the plain language of the statute. First, CMS concedes that the legislatures intended the amendment to allow State Building Venture to obtain financing for the build-out. The record reflects that that would require a 60-year lease, not a 15-year lease. In response to questions about the length of the lease,  at that time, end quote. And when the amendment was introduced to the Senate, Senator Bruce said that the amendment, quote, provides that leases shall be subject to renewal after the 15-year limit has expired. This is necessary for the purposes of leasing the commercial space. Representative Olson also said, quote, that lease meets with the terms of the normal central management leasing of 15 years, with the additional caveat that it is subject to renewal. This was put in place because of the financing package. So while we don't think the legislative history should be looked at for this statutory interpretation, even if it is, it does not contradict the plain language. One last word on the interpretation. CMS has argued that the fact that the statute uses the plural, leases, rather than the word lease, shows that the director gets to look at it at each renewal. That makes no sense whatsoever. First of all, the word leases, plural, was in the statute before the amendment. So it clearly cannot be referring to the renewals. The reason the plural is there is that the statute, both before and after the amendment, says that the director can lease portions or all of the space. So that means there can be multiple leases. It doesn't have to be one lease for the entire space. There can be multiple. And that's why it refers to leases as opposed to lease. CMS's argument on sovereign immunity is that this is a breach of contract suit. They repeatedly, in argument as well as in their brief, argue that SPV is seeking a determination of its rights under the lease. The problems with this argument are, first, SPV does not allege a breach of contract. Second, it does not seek a declaration of its rights under the lease, or even that it has a right to automatic renewals. And third, the order appealed from does not find a breach of contract of any kind. Counsel, do you ñ does opposing counsel have to show that it really is a breach of contract action for purposes of sovereign immunity, or do you have to show that you're really seeking injunctive relief rather than contractual relief? I think the way the dissenting Justice Hoffman put it is what you're seeking is declaratory relief founded upon contract. And so either under his analysis or opposing counsel's analysis, it says they're not seeking injunctive relief here. Because everything you've said so far is we don't have a breach of contract action. Is that the standard, or is the standard you have for sovereign immunity purposes, you have to show that you're seeking injunctive relief? I think the standard ñ there were a couple questions there, but I think the standard is they have to show that sovereign immunity applies. Therefore, they have to show that it's a present claim against the state. And in order for it to be a present claim against the state, it has to be a breach of contract claim. That's kind of loosely said, but basically it has to be a claim founded on a contract in order for it to be a present claim against the state. And that's their burden to show that. So you disagree with Justice Hoffman that this is declaratory relief founded upon contract? Yes, I do disagree. That would be enough? If you didn't ñ based on his conclusion, would that be enough for this Court to find ñ if we agreed with Justice Hoffman, would that be enough to find sovereign immunity in this case? No, I don't think so, because ñ just because it's a declaratory relief that we're seeking and there's a contract involved is not sufficient. And I think in a sense that's really what Judge Hoffman found. He said they're seeking declaratory relief and there's a contract involved here. While there is in the background, it's not the relief that we're seeking and it's not what we're asking ñ it's not what we asked the Court to decide. And in fact ñ But you need a declaratory action based on something. What is it you're basing it on? Relief from what? Declaratory judgment based on the director's interpretation of the statute. Because that's what they say gives them these rights. They're not saying that the lease says you can't have a long-term lease or that it requires a reexamination. They're saying the statute requires that. And that if you look anywhere in their brief, you'll see that they're always arguing that it's the statute that gives them this right to reexamine the lease. That's why the contract isn't really the thing that's at issue. In fact, Judge Mason explained exactly what she was ruling on. She said, quote, I'm not looking at the party's lease. I'm not looking at enjoining a breach of the contract. I'm looking at interpreting a statute, which is what courts do. So that's what she decided to do. And originally there were three counts. The first two counts were for promissory estoppel and collateral estoppel. And she dismissed those claims because those would have required ñ sovereign immunity would have applied there. And she held the statutory construction one because that's the one that she said So you're disputing that this action is about a current contract with the state? I know you talk about the statute, but obviously the relief you're going to eventually request is under this contract, right? Not necessarily. The relief that we are going to request has been requested and granted, which was a declaratory judgment explaining what the statute means. There's been no breach of the lease, and we have not asserted a breach of the lease. Now, I see your time's running. I mean, their sovereign immunity, if we find that the director was sued in their official capacity, he would also prevail, is that right, on sovereign immunity? Yes. I know your position, and you dispute that. I just want your time to go into that argument. I'm sorry. Could you repeat that? Your position is that the director is not sued in their official capacity, right? Correct. I think counsel's argument was if this court finds that the director was sued in their official capacity, then sovereign immunity would also attach. Do you agree with that? No, I don't agree with that because there still has to be a present claim against the state, which there isn't regardless of that first. I think that goes more to the officer suit exception, but there still has to be a present claim against the state, which we don't have here. So it was an oral proposition. Yes. Premised by counsel. But you also dispute the first portion of that. Yes, we do. And I only have another minute or so, but I think the most telling fact as to what happened here and what was being addressed is the order itself that was entered. Because the finding was the court finds that 20 ILCS 405 unambiguously authorizes leases of the commercial space at the Thompson Center for terms of 15 years subject to renewals when in the judgment of the director at the time of entering that lease, including renewals, will be in the best interest of the state, and that the director has no discretion to exercise his or her judgment at the time of each individual renewal. The lease isn't in there. That would apply to any lease. It's not based solely on our lease, and it's not telling the state or the director what he or she can or cannot do. It's not forcing them to do anything. It's not saying you can't breach the lease. So what we have here is exactly what we're supposed to have. We have a declaratory judgment as to what the statute means. Mr. Weiss, are the statutory terms incorporated as part of the lease contract? Loosely, I would say yes, but not in the way that CMS argues it. I don't know what loosely means. Is it a term in the lease or isn't it? I'm not saying it is, and I'm not arguing it. I just want to know if it's there. I don't think it's really a term of the lease. I think all contracts are governed by other statutes, but there's multiple cases that we cite in the briefs where there was a contract that would have the same statutes that are involved in it where they still said sovereign immunity does not apply. Thank you, counsel. Thank you. Mr. Langer, before you get going, I think I did put words in your mouth. I did misspeak in that on sovereign immunity it's an and proposition, right, suing the director in official capacity and be a contract action in this case? Correct. Okay. Correct. All right. But along that point, under the Court of Claims Act, and this is particularly important, the Court of Claims Act provides, and I'll quote it, all claims against the state, which would be an official capacity claim or something that takes it out of an individual, an officer acting in excess of authority, founded upon any contract entered into with the state of Illinois. It does not say every breach of contract claim. It says all claims founded upon a contract. That means that there can be claims that are founded upon a contract that are not styled, a breach of contract claim that still fall within the exclusive jurisdiction of the Court of Claims. Would it matter that this contract wasn't even at issue here? I mean, a declaration that the director has to make a decision at the beginning rather than at the end of each lease term, I mean, if we just look at that, I know that Justice Hoffman and I think yourself would say, well, that's part and parcel of the contract here. Correct. You can't separate the two. Correct. But I think opposing counsel would say that, no, we just want a declaration on the statute. Opposing counsel definitely tries very hard to divorce this case from the contract and look only at the statute. But a couple points of response. First of all, opposing counsel doesn't have standing to determine the meaning of the statute without having entered into a contract. The statute is meaningless. The statute is irrelevant to SBV unless they have this contract. The reason they want an interpretation of the statute is to determine whether the renewals are automatic, the renewals under the lease. They're explicitly using the statutory interpretation to define their leasehold interest, their property rights, and where do their property rights come from? They come from the contract. So it's not possible to just say, well, we're just looking at a statute, not a contract. They're not. If you just look at the statute without a contract, there's no standing. There's no point. It's a purely advisory opinion that doesn't matter to anybody for anything. Why does the statute matter? Because they're using it to define their contract terms. And, again, that statute is legally deemed to be a contract term. That statute is part of the lease. So when you interpret that statute, what you're interpreting for the purpose of defining whether they have automatic renewals and where do the automatic renewals come from, they say, the lease, you're also interpreting what's a legally deemed or a legally putative contract provision. The statute is part of the contract. The parties, the law presumes that the parties would have written all that language into the contract. They didn't need to because there's a statute that says that. So your point would be that the court of claims, then, should not only look if there was a – is fully capable of not only looking whether there was a breach of the terms but defining those terms. Correct. Vis-a-vis the statute. That's correct, Your Honor. That's correct. And opposing counsel has, in the briefing, argued that that's a very dangerous proposition, a very broad proposition. But it's not. This is a rare case. This is a rare case. It's not every case that a statute would be deemed to be a contract provision. Here it is. It's not every case that your definition or how you define or characterize a case as one founded upon a contract or not is relevant. That's a very rare case where, you know, in most cases it doesn't matter whether it's a claim founded upon a contract or a statutory interpretation case. It does here. Why? Because of sovereign immunity and putting it in the court of claims. That's a very small subset of possible cases. But the court of claims is certainly capable of construing statutes. The court of claims isn't limited only to, you know, just common law determinations. It is part of its function to construe statutes. And this is what the General Assembly intended when it provided the broad statutory provision in AB of the Court of Claims Act that said all claims against the state founded upon any contract, not just breach of contract claims, but all claims founded upon a contract, clearly that could involve the court of claims interpreting a statute from time to time. This contract doesn't make specific reference to the statute, does it? It does not. It does not. And it could have. I'm sorry, Your Honor? I guess it could have at the time of negotiation saying it's subject to the terms of this right of best interest of the state standard. It could have. It could have. But the law doesn't require it to have. You know, that's why the cases say if there's a statute, you don't have to write in the terms of the statute into your contract. We presume that they're there without the parties having to write them in. But they were not explicitly written in, Your Honor. You're correct. Mr. Langer, would you mind backing up where I started with Mr. Weiss? Sure. Tying back to where you ended the first time you were here. When you made reference to the two rulings, are we talking about the mootness ruling and really what Justice Thomas referred to as that kind of advisory ruling? Or is there something else? No, those are the two rulings I'm referring to that we characterize as alternate holdings. Instead of a mootness ruling and an advisory opinion, alternate holdings. I find this is moot, and I find that this would be barred by sovereign immunity or that this is barred by sovereign immunity. The Court looked at the facts of that case, and this is barred by sovereign immunity. If this would have gone up on appeal, appellees would have said sovereign immunity and mootness. These are alternate grounds. These are alternate grounds of the holding. That's the Director's position on that. But you do agree that based on the mootness, the case is over, and collateral estoppel wouldn't apply. Correct. But alternatively, based on sovereign immunity, the case is over and collateral estoppel would apply. And because our view is that those are equally viable alternate holdings, either one would suffice. Thank you. Turning to the actual interpretation of Section 315 AS for a moment, lease of state property is subject to special rules. The General Assembly has limited substantially the ability of the state to enter into a lease of state property. It has put the best interest of the state requirement into those provisions. Those don't exist outside of state property. Those don't exist between private parties. State property is subject to special rules. That doesn't mean, though, that when a party comes before the General Assembly and says we need a 60-year lease, then you get to enter into a 60-year lease without having consistent best interest determination. That's inconsistent with the rest of the statute where the General Assembly zealously guards the requirement for the best interest determination. Indeed, as Justice Burke, I believe you were indicating, nobody can look at a lease at the beginning of a 60-year term and make a reasoned decision that for the next 60 years, this is going to be in the best interest of the state. In 1984, making that determination, even up to now, there's any number of unforeseen things. Has the state changed its interpretation of the statute as it concerns the right to automatically renew? Previously, the Director of CMS had a different interpretation. That's correct. And should that weigh in at all? And if so, how? Well, Your Honor, again, any sort of collateral estoppel claim or estoppel claim against the state that that would be used was dismissed by the court below and has not been appealed. That's really been taken off the table. Insofar as that would impact the analysis of the plain language of the statute, it doesn't. We're looking at the statutory terms, not the past interpretation, not the current interpretation in terms of deference to the agency. We're saying the plain terms of the statute. How the previous director interpreted the statute isn't before us right now. Again, there's no estoppel claim that's been removed under the theory that it would be in the Court of Claims Exclusive Jurisdiction. Do you think that the current interpretation by the director chills the ability to get financing or maintain financing on a long-term lease? I don't believe so, Your Honor. It is true that it's not a locked-in 60-year lease. That's true. At the same time, having a right to renewal, subject to best interest determination, places the lessee in a better position than having to renegotiate a lease, maybe subject to bidding and other state requirements on those at the end of every lease determination. Instead of having to go through that whole process, they say, well, subject to best interest determination, we just get to go in and enter into it again. We're the presumptive leaseholder going forward, essentially. And it gives them that right. So while not necessarily as strong as a locked-in 60-year lease, it certainly gives them a meaningful, indefinite advantage that could be used to help gain the financing. Is best interest defined? Best interest of the state is not defined in the statute. Thank you, Counsel. Thank you very much, Your Honors. Case number 108-673.